DECISION AND JOURNAL ENTRY
The state of Ohio appeals from the judgment of the Lorain County Court of Common Pleas granting postconviction relief to Daniel Smith pursuant to R.C. 2953.21. This Court reverses.
On June 29, 1994, Smith was indicted on six counts of aggravated trafficking in drugs in violation of R.C.2925.03(A)(1). On October 6, 1994, Smith pled guilty to all six counts in the indictment before Judge Lynett McGough. Smith failed to appear for his pre-sentence investigative report, and on November 14, 1994, Judge McGough issued a capias for Smith's arrest and ordered that he be held until sentencing.
On November 17, 1994, immediately prior to sentencing, unbeknownst to the state, Smith, or Smith's attorney, Detective Alan Leiby approached Judge McGough in chambers and informed her that he had information that he wanted her to consider in sentencing. Judge McGough informed Detective Leiby that he would have to appear in open court and place his concerns on the record if he wished her to consider any information.
During the hearing, Detective Leiby and another detective appeared and provided statements regarding their knowledge of Smith's criminal behavior. Detective Leiby stated in open court:
 In reference to Mr. Smith, our department did make a controlled drug buy from Mr. Smith on 6-7-93. We used a confidential informant that was identified as A 0 110. We bought .557 grams of crack on him that day; six pieces. He was scheduled for a jury trial on the morning of 1-19-94. That was postponed as the informant was found murdered in Woodland Cemetary in Cleveland. Information has since then indicated he is a major drug dealer in this city. It was his intention to plead to this, and then build up enough money to leave the state without going to jail on these charges.
It was not disclosed that Detective Leiby had approached Judge McGough immediately prior to the hearing.
Smith was sentenced to two years on each of the six counts. Judge McGough ordered that the sentences run consecutively, finding, inter alia, that Smith had been on probation on another matter when he had committed these offenses, that Smith was not amenable to supervision, and that Smith was a danger to the community.
Subsequently, Smith was tried on the murder charges that Detective Leiby had mentioned at Smith's sentencing. During this investigation and trial, Smith learned that Detective Leiby had approached Judge McGough in her chambers immediately prior to Smith's sentencing for aggravated trafficking in drugs. Based on this revelation, and claiming that he had pled guilty because his attorney had represented that Smith would only serve a total of two years, Smith filed for postconviction relief on September 20, 1996.
The state informed Judge McGough that she may be called as a witness in Smith's postconviction hearing, and Judge McGough accordingly recused herself from considering the petition. The case was then transferred to Judge Edward Zaleski. On April 4, 1997, Smith filed a supplemental memorandum in support of his petition for postconviction relief. Thereafter, on April 23, 1997, Smith filed a motion to withdraw his guilty plea and to vacate his sentence, pursuant to Crim.R. 32.1. A hearing was held on Smith's motions on May 5 and 7, 1997.
On April 10, 1998, Judge Zaleski granted Smith's postconviction petition, vacated his sentence, and denied his motion to withdraw his plea, finding that the meeting between Detective Leiby and Judge McGough had been improper and that it had violated Smith's confrontation and due process rights.
The state timely appeals, asserting two assignments of error:
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS THE APPELLEE'S PETITION FOR POST-CONVICTION RELIEF WITHOUT A HEARING PURSUANT TO [R.C.] 2953.21 AND THE DOCTRINE OF RES JUDICATA.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE'S PETITION FOR POST-CONVICTION RELIEF WHEN THE EVIDENCE ADDUCED AT THE HEARING REFUTED THE APPELLEE'S CLAIMS.
In its second assignment of error, the state argues that the trial court erred in granting Smith's petition for postconviction relief because the evidence produced at the postconviction hearing directly contradicts the trial court's findings. This Court agrees.
It is unclear whether the trial court granted Smith's request to vacate his sentence under Smith's initial postconviction relief petition, filed on September 20, 1996, or under Smith's April 23, 1997 Motion to Vacate Sentence. In any event, however, Smith's Crim.R. 32.1 motion was in actuality an untimely petition for postconviction relief.[1] See e.g., State v. Cool (Mar. 22, 2000), Summit App. No. 19685, unreported; State v. Brooks (July 14, 1999), Lorain App. No. 98CA007122, unreported, citing State v.Alvarez (Apr. 2, 1997), Lorain App. No. 96CA006595, unreported, appeal not allowed (1997), 79 Ohio St.3d 1482.
"Absent a showing of abuse of discretion, a reviewing court will not overrule the trial court's finding on a petition for post-conviction relief which is supported by competent and credible evidence." State v. Mitchell (1988), 53 Ohio App.3d 117,119, appeal not allowed (1998), 38 Ohio St.3d 715. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In his petition for postconviction relief, Smith argued that he should be permitted to withdraw his guilty plea and that his sentence should be vacated. Smith reasoned that because Judge McGough relied on the ex parte communication from Detective Leiby the sentencing proceeding was fundamentally unfair, and therefore, his constitutional rights of due process and confrontation were violated.
Sentencing is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Toledov. Reasonover (1965), 5 Ohio St.2d 22, 24. A trial court abuses its discretion when it relies on ex parte communications in reaching its decision and fails to give a defendant notice and the opportunity to respond. State v. Taylor (Nov. 2, 1998), Warren App. Nos. CA97-10-110 and CA97-10-111, unreported. This is so because "[a] sentencing judge may violate an offender's due process rights when [improper] considerations constitute the basis for the sentencing decision and thereby undermine the fundamental fairness of the proceeding." State v. Arnett (2000), 88 Ohio St.3d 208,217 (The Ohio Supreme Court found that a defendant's due process rights had not been violated when the sentencing judge stated on the record that she had consulted a religious text during deliberations and quoted a portion of that text during the sentencing because the record showed that many factors had formed the basis of the sentence. The Court held that "when a sentencing judge acknowledges that he or she has consulted a religious text during his or her deliberations and quotes a portion of that text on the record in the sentencing proceeding, such conduct is not per se impermissible and does not violate the offender's right to due process, when the judge adheres to the sentencing procedures outlined in the Revised Code and when the judge's religious references do not impair the fundamental fairness of the sentencing proceeding.").
The trial court granted Smith relief based on the meeting that had taken place between Detective Leiby and Judge McGough. The court held that "[t]he secret, ex parte, and unsworn meeting by [Detective] Leiby with Judge McGough was improper and violated [Smith's] rights to confrontation and Due Process as guaranteed by the Ohio Constitution and the United States Constitution. Additionally, the meeting along with the sentence imposed has the appearance of impropriety." The record in the instant case, however, is void of any indication that Judge McGough improperly considered information other than the criteria listed in R.C.2929.12. Rather, prior to imposing sentence on Smith, Judge McGough stated that she specifically did not consider the information of which Smith complains:
 I'll tell you what I'm going by. And I'm going to note for the record that the officers' information is certainly at this time not a conviction.
 I'll tell you what I'm going to go by, though. I am going to go by the fact that you are presently on shock probation, and I believe were on probation to Judge Janas's Court at the time that you committed six new counts of aggravated trafficking.
 And, in addition to that, I'm going to note your prior record, and I'm going to note the fact that you have failed to appear, and that you are here today based upon a warrant issued by this Court.
 So with that in mind, and given your continued drug trafficking during a time when you were on probation to Judge Janas, I have to find that you are absolutely not amenable to any kind of supervision, and that you represent a clear and present danger to this community and Lorain County. And with that in mind, I am going to do something that I rarely do.
 It will be the judgment of the law and sentence of this Court that you will serve a term of two years on each of the six counts contained in this Indictment. * * * And I'm going to run these counts consecutively.
 Further, at the hearing on Smith's postconviction motion, Judge McGough testified:
 A. Detective Leiby told me [in chambers] that he was aware that [Smith] was scheduled for sentencing, that he had information which he thought should be heard relative to the sentencing of this defendant, and I told him to put it on the record.
* * *
 Q. And to your recollection, did Detective Leiby appear at sentencing?
A. Yes, he did.
 Q. Did he give the Court a statement as to what he wanted the Court to know?
A. Yes, he did. * * *
* * *
 Q. And when you sentenced Danny Smith on November 17th of 1994, can you tell the Court what your reason for sentencing Danny Smith to that term was?
* * *
 A. When this case came up for sentencing, as I do in every case that comes for sentencing, I pull the file and look at the information that I have. In this case, I did not have a presentence evaluation and report; although, at the time I took the plea I think that I had ordered a PSI. I don't believe the defendant reported to the Adult Probation Department.
 So when he failed to report, I did become aware that there was a presentence evaluation in Judge Janas' court because I was, of course, aware of the previous conviction and the fact that the defendant was on shock probation in Judge Janas' court. So I requested and received the PSI from Judge Janas' court, together with information relative to his shock probation. And, of course, the six cases, the six counts of aggravated trafficking in drugs, which were pled to in my court, occurred while this defendant was on shock probation to Judge Janas.
 Q. And did you ever, in consideration of your sentence, did you take into consideration any information that Detective Leiby submitted to the Court at sentencing in open court?
 A. As I recall, and I think the record reflects, Detecitve [sic] Leiby advised that this defendant was charged in a homicide, that case had not been tried, and he had not been convicted. So, yes, I was aware that there was a pending charge.
 But as is the policy, if there is not a conviction, it doesn't impact on sentencing. So Detective Leiby indicated that there was a pending charge. I think I said that I'm not — there may be a charge, but there's no conviction. So, no, I did not consider anything to do with the pending case.
 Q. When imposing the sentence on Danny Smith, did you take into consideration his failure to appear for a presentence evaluation and report?
 A. I took into consideration that he had been in prison and shocked out on a charge of corruption of a minor; that while he was on shock probation, he had pled to six additional counts of aggravated trafficking in drugs; I took into account the fact that he had failed to appear and that a capias had to be issued for him; I took into account the fact that he failed to appear to the Adult Probation Department to complete the presentence evaluation and report; and found that he had demonstrated absolutely no amenability to community controls or probation.
 Both the trial court, in finding that the information from Detective Leiby was improperly considered in Smith's sentencing and violated Smith's rights of confrontation and due process, and Smith, in his appellate brief, rely on cases in which the judge had either stated on the record that he or she had relied on communications or information that was improper, or in which the record explicitly indicated reliance upon such information. See, e.g., State v. Whitmire
(Dec. 9, 1988), Lake App. No. 12-068, unreported (finding a due process violation based upon the satisfaction of the conjunctive requirements of "reception and utilization of extra-judicial, unauthenticated matters by a trial judge in criminal proceedings"). This is not such a case. Judge McGough specifically testified that she did not consider the information from Detective Leiby in sentencing Smith, and nothing in the record indicates such reliance. See State v. Ellis (Sept. 4, 1996), Hamilton App. No. C-950307, unreported, appeal not allowed (1997), 77 Ohio St.3d 1518. Therefore, because the ex parte communications were not relied upon in sentencing Smith, the trial court erred in finding that Smith's rights of due process and confrontation had been violated.
Accordingly, this Court finds that the trial court abused its discretion in granting Smith's petition for postconviction relief. As such, the state's second assignment of error is well taken and this Court need not discuss the first assignment of error. See App.R. 12(A)(1)(c).
The judgment of the Lorain County Court of Common Pleas is reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 ___________________________ DONNA J. CARR
BAIRD, P.J., SLABY, J., CONCUR.
[1] The trial court could not properly have entertained the later motion, so we assume the vacation pursuant to the original postconviction relief petition, and the implicit denial of the later motion, due to its untimeliness.